IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20-CR-00111 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| HENDRI HOPKINS, JR., | ) | MOTION TO REVOKE ORDER OF |
| | ) | RELEASE |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Marc D. Bullard, Assistant United States Attorney, and hereby files this Motion to Revoke Order of Release of Defendant Hendri Hopkins, Jr.

I.   **Factual Background**

On January 27, 2020, United States District Court, Northern District of Ohio, Magistrate Judge David A. Ruiz, approved and signed a complaint and arrest warrant charging Defendant Hendri Hopkins, Jr., with Distribution of 10 grams or more of a mixture or substance containing a detectable amount of carfentanil, a schedule II controlled substance, a fentanyl analogue, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). This Complaint was based on Defendant's December 19, 2019, sale of 21.43 grams of heroin, fentanyl, and carfentanil to an Undercover Agent on video recording. At the close of this sale, Defendant removes what appears to be a firearm and what Defendant identifies as a: Glock 19, gen. 5, from his waistband and displays it to the agent. (R. 10: Detention/Preliminary Hearing Transcript, Page ID, 9-10, Introducing Government Exhibit 1; Ex. 1, at ¶ 21.) The Undercover Agent immediately attempts to purchase the firearm, Defendant replaces the weapon in his waistband, and declines the offer to buy. (*Id.*)

On January 30, 2020, with the aforementioned warrant in-hand, Undercover Agent completed another controlled purchase from Defendant of 15.02 grams of a mixture containing heroin (Schedule I), and carfentanil (Schedule II), on video recording. At the close of this sale, when Agents arrested Defendant, he was holding the prerecorded buy money that he received in exchange for the prior mentioned controlled substance that he had just sold the Undercover Agent. A consent search of the vehicle driven by Defendant to the sale yielded rounds of live ammunition in a bag located in the vehicle trunk.

On the same day, Defendant's initial appearance was held; the Government moved for pretrial detention of Defendant, Defendant requested a preliminary hearing, and both issues where set for hearing on February 4, 2020.

On February 4, 2020, Defendant's preliminary and pretrial detention hearings were held simultaneously. At this hearing, the Court noted: [T]he recommendation of the Pretrial Services Department is that there are no conditions or combinations of conditions that would assure Defendant's appearance as well as the safety of the community. (*Id*., PageID 6.)

The Government called Special Agent Keith Lewis, Alcohol, Tobacco and Firearms ("ATF"), who identified and adopted his affidavit in support of the criminal complaint as his testimony of the underlying facts of the December 19, 2019, undercover buy from Defendant, still images from the video of the undercover buy, the January 30, 2020, undercover buy from Defendant and subsequent arrest of Defendant immediately afterward. (*Id*., PageID 10; Exhibit 1). The affidavit set out the facts of the investigation and in particular the facts of the December 19, 2019, undercover buy from Defendant of the carfentanil mixture charged in the complaint. (Exhibit 1.) Further, Agent Lewis testified to still images obtained from the video recording of the 12.19.2019, undercover buy from Defendant: Showing Defendant holding and inspecting the drug

2

bag; holding prerecorded buy money received in exchange for the carfentanil mixture; and holding what appears to be a firearm removed from his waistband. (*Id*., PageID 10-13; Government Exhibits 2-4.) Next, Agent Lewis testified that another undercover buy was completed by Defendant on January 30, 2020, wherein Defendant again sold what was believed at the time to be 'a half ounce of heroin, fentanyl analog[ue].[1]' (*Id*., PageID 13-14.) After the undercover buy was completed, Defendant was arrested in possession of the prerecorded buy money. (*Id*., PageID 14.) A consent search of his vehicle yielded 'various amounts of firearm ammunition' in the trunk of the vehicle.[2] (*Id*., PageID 14.)

The Government proffered for the record in support of detention: the Affidavit in Support of the Complaint authored by Special Agent Keith Lewis; the prior mentioned -3- still images taken from the December 19, 2019 buy recording of Defendant; and the PSR. (Exhibits 1-4.)

Defendant proffered a letter from Defendant's Grandmother indicating her 'health issues' and need of Defendant's assistance. (*Id*., PageID 21.) Also, Defendant's mother was present and willing to provide her information in terms of residence for Defendant, if placed on home detention. (*Id*., PageID 22.) Defendant also proffered his girlfriend and mother of his child, indicating that she needs Defendant's assistance in childcare because she works full time at amazon. (*Id*., PageID 22.) Defendant then advised that he is 'not running from [his] situation;' and '[he] just wanted to get out on detention to support my family.' (*Id*., PageID 23.)

---

[1] See also, February 13, 2020, Drug Chemistry Report, authored by Heather Pilch-Cooper, Laboratory Report 2019-9405, request 5, [Later analysis by the Cuyahoga County Regional Forensic Science laboratory, ("CCRFSL"), in identified the sold substance as 15.02 grams of a mixture containing Heroin (Schedule I), and Carfentanil (Schedule II); and an additional fragments as .08 grams of Heroin (Schedule I)].

[2] Later inventory of the recovered ammunition, showed -40- live rounds of ammunition, of various manufactures.

Contrary to Defendant's main argument against detention, that is to support his family, the PSR indicated that Defendant had no verifiable employment. (*Id.*, PageID 25; PSR; See also, *Id.*, PageID 33, Defendant's advising through counsel by proffer for the record, that since his release from prison '*he did have four jobs, and he was working for a landscaping agency but then left and recently started working on his own.*') The PSR further found that Defendant had a history of nonappearance; Defendant had a prior conviction for attempted felonious assault with a one year firearm specification, wherein he was sentenced to a term of incarceration for a period of two years; Defendant reported substance abuse history with marihuana; the PRTA risk assessment placed Defendant as a level 5. (*Id.*, PageID 25-27; PSR.)

On February 12, 2020, Grand Jury of the United States District Court, Northern District of Ohio returned a multi-count indictment, alleging Defendant with the following offenses:

- **Count 1**: (12.19.19) Distribution of a Controlled Substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B): 21.43 grams Heroin (Sched. I) and Carfentinal (Sched. II);

- **Count 2**: (01.30.2020) Distribution of a Controlled Substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B): 15.02 grams Heroin (Sched. I) and Carfentinal (Sched. II);

- **Count 3**: (01.30.2020) Felon in Possession of Ammunition, 18 U.S.C §§ 922(g)(1).

(02.12.2020, Indictment.[3])

The government requests that this Court review the Magistrate Judge Ruiz's determination, revoke the order of release, and order Defendant Hendri Hopkins, Jr., detained pending trial.

---

[3] The indictment also included forfeiture of the ammunition.

**II.      Law and Argument**

Pursuant to Title 18, United States Code, Section 3145, "If a person is ordered released by a magistrate, or by a person other than by a judge of a court having original jurisdiction over the offense . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1).

As noted above, Defendant Hendri Hopkins, Jr. is charged with distribution of detectable amount of heroin, and carfentanil, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); in two separate counts occurring on separate days weeks apart. Additionally, he is charged in Count 3 of the Indictment with Felon in Possession of Ammunition, 18 U.S.C §§ 922(g)(1).

Counts 1 and 2, separately carries with it the rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" so long as there has been a probable cause finding. 18 U.S.C. § 3142(e)(3).

Of course, "a grand jury indictment, by itself, establishes probable cause to believe that a Defendant committed the crime with which he is charged." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010).

The presumption in favor of detention imposes only a burden of production on the Defendant, and the government retains the burden of persuasion. Id. "A defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight. Although a defendant's burden of production is not heavy, he must introduce at least some evidence." Id. (internal citations and quotations omitted). The government submits that the Defendant cannot rebut either presumption, and that he failed to do so during the

5

detention hearing on February 4, 2020. To be sure, the Defendant did not introduce any evidence at the detention hearing, save the fact that members of his family were in attendance; and proffered statements from them that they needed his assistance. The mere fact that members of his family were present in the courtroom should not be given such significant weight as to rebut the presumptions that all parties agree exist. Therefore, the presumptions remain, and the Defendant should be detained pending trial. The items presented by Defendant arguably at least went towards the issue of flight, but Defendant failed to offer any evidence to rebut that he was a danger to the community.

In fact the evidence presented by the government showed that Defendant was a serious risk of danger to the community as a repeat seller of 'carfentanil', a fentanyl analogue, in excess of 10 grams, on two separate occasions. (See also, Exhibit 1, ¶ 19, Quoting Defendant: *I sell dope bro, like I know this area. Like, this spot right here? This Walgreens is a hot spot . . . I'm the one selling you the dope. I'm the one taking the risk*.) Defendant had access to firearms and may have been interested in selling one. (Ex. 1, ¶ 9, 21; See also, Ex. 2) On December 19, 2019, while selling drugs, Defendant was in possession of what clearly appears to be a firearm, and that the parties to the conversation were clearly discussing as a firearm. (*Id*.; See E.g., ['*glock 19, gen. 5'* description provided by Defendant.]) On December 19, 2019, Agents were unable to apprehend Defendant. (*Id*., PageID 19.) As a result, the firearm shown by Defendant has not been recovered. In fact, closer review of the recording reveals Defendant indicating he has another firearm, a .22 caliber, at his girlfriend's home. (Ex. 1, ¶ 9, 21.) Therefore, Defendant poses a serious risk of danger to the community as an armed seller of carfentanil.

In the alternative, should this Court find that the Defendant has rebutted the presumption for both of the above-enumerated offenses, the factors still weigh heavily in favor of detention

6

pending trial. The Sixth Circuit in Stone went on to state that, "[e]ven when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" Id. (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). This, the Court explained, is a reflection of "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." Id. Therefore, the Defendant "should present all the special features of his case that take it outside the congressional paradigm." Id. at 946 (internal citations and quotations omitted). Again, the Defendant has clearly failed to do so.

The factors that are to be considered regarding detention are outlined in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Review of these factors weigh heavily in favor of detention. The nature and circumstances of the instant offenses involve exceedingly dangerous and deadly controlled substances. Heroin, fentanyl, carfentanil, are the substances at the heart of the opioid crisis facing our country. These substances are killing people en masse. There is simply no argument that the distribution of these substances does not pose immense and immediate danger to the community.

Likewise, the Defendant is charged with being a felon in possession of ammunition. Any ammunition; in the hands of a previously convicted felon who is disabled from possessing a firearm is a significant risk to our community. As such, this factor weighs in favor of detention. Likewise, Defendant's possession of a firearm as shown in Exhibit 4, shows Defendant is an armed seller of carfentanil posing a great danger to our community.

When reviewing the weight of the evidence against the person, it is important to note that this "factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 f.3d at 949, citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985) (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community."). As noted above, the Defendant poses substantial risk to the safety of the community drug trafficking, the dangers attendant to armed drug trafficking, and

his prior conviction. Furthermore, he has failed to appear for prior criminal cases. Additionally, the Defendant faces substantial incarceration if he is convicted of the offenses charged. Which the government submits is likely, he will face a standard range sentence of 63-78 months, with a mandatory minimum of five years up to forty years. With his history of capias and the lengthy penalties Defendant is facing in this case, he has every incentive to repeat his previous behavior of failing to appear. He poses a significant danger to the community and he has substantial incentive to flee. This factor weighs heavily in favor of detention.

The third factor to be considered is "the history and characteristics of the person" as broken down in the statute. 18 U.S.C. § 3142(g)(3). Defendant has a prior conviction for attempted felonious assault with a 1 year firearm specification, wherein Defendant was sentenced to a 2 year term of incarceration. The PSR also indicated a history of nonappearance. That factor weighs in favor of detention.

Finally, the court is to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). All of the facts regarding the Defendant, discussed above, are relevant in this consideration. As shown in this case, Defendant is an armed carfentanil seller. He has no verifiable income, save the proceeds of drug trafficking. He has been shown to repeatedly sell supply levels of carfentanil. He has a prior conviction for attempted felonious assault with a firearm specification where he was sentenced to a term of two years. Therefore, this factor weighs in favor of detention.

There is not a single factor weighing in favor of release. He is facing significant incarceration, and has a documented history of repeatedly failing to appear. Review of the detention factors makes clear that detention is necessary to protect the community and to ensure the Defendant's appearance at future court hearings.

**III.     Conclusion**

Based on the foregoing argument, the Government requests that this Court review Magistrate Judge Ruiz's release order and find that there are no conditions or combination of conditions that would reasonably assure Defendant Hendri Hopkins, Jr.'s appearance in the Northern District of Ohio or the safety of the community.

                                              Respectfully submitted,

                                              JUSTIN E. HERDMAN
                                              United States Attorney

By:   /s/ Marc D. Bullard
        Marc D. Bullard (OH: 78206)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3644
        (216) 522-7499 (facsimile)
        Marc.Bullard@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 19 day of February 2020 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Marc D. Bullard
Marc D. Bullard
Assistant U.S. Attorney